# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br>vs.<br><br>JOSHUA BROWN,<br>　　　　Defendant. | Case No. 21-cr-14-CJW<br><br>**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS**<br><br>**Filed Under Seal** |

_____

## I.　　INTRODUCTION

On March 18, 2021, the Grand Jury charged Defendant on one count of Possession of a Firearm by a Felon in violation of 18 U.S.C. Sections 922(g)(1) and 924(a)(2), one count of Possession of a Stolen Firearm in violation of 18 U.S.C. Sections 922(j) and 924(a)(2), and Possession of a Firearm with an Obliterated Serial Number in violation of 18 U.S.C. Sections 922(k) and 924(a)(1)(B). (Doc. 2.)

The matter before the Court is Defendant's Sealed Motion to Suppress. (Doc. 24.) The Honorable Charles J. Williams, United States District Court Judge, referred the motion to me for a Report and Recommendation. The Government timely filed a Resistance. (Doc. 29.) I held a hearing on Wednesday, September 15, 2021. (Doc. 36.)

At the hearing, the Government offered the following exhibit, which was admitted without objection: Cedar Rapids Police Department ("CRPD") Officer Kyzer Moore's patrol and body camera videos from July 18, 2020. (Gov. Ex. 1.)

The Government called one witness:

- CRPD Officer Kyzer Moore.

The Defendant called two witnesses:

- Scott Takes, owner of Underground Art Studios; and
- Tina Debban, Investigator for the Public Defender's Office.

For the following reasons, I respectfully recommend that the Court **deny** Defendant's Motion to Suppress.

## II. FINDINGS OF FACT

### A. *Facts Related to the Events of July 18, 2020*

The following facts are deduced from the hearing testimony of CRPD Officer Kyzer Moore, unless otherwise noted. Officer Moore has been employed by the CRPD for four years. I found him to be a credible witness.

At approximately 4:55 a.m. on July 18, 2020, Officer Moore was on patrol on the southwest side of Cedar Rapids, Iowa. The neighborhood had been the site of several crimes involving switched vehicle license plates and/or repainted vehicles to disguise stolen vehicles in the past year. Officer Moore had been involved in several of these cases. Officer Moore was driving west on Wilson Avenue when he met an orange motorcycle going east. The motorcycle caught his attention because it was the only vehicle out at that time of day. The motorcycle did not commit any traffic violations and its license plate was properly displayed. Officer Moore ran the license plate of the motorcycle and it came back registered to a 2004 blue Harley Davidson motorcycle. The registration did not indicate that the owner of the motorcycle was a barred driver or otherwise should not be driving.

Officer Moore admitted that he could not discern the make of the motorcycle.[1] However, because the color did not match the one on the registration, he turned around

---

[1] Officer Moore testified that it is more difficult for him to discern the make of a motorcycle than the make of an automobile.

and followed the motorcycle as the car turned onto Third Street S.W. The motorcycle then turned onto 20th Avenue S.W. and then turned right into the back alley driveway for the house at 2003 Third Street S.W. ("the house"), which is the first driveway off of 20th Avenue S.W. Defendant knew the owner of the house. (Bodycam at 5:13:47.)[2] Officer Moore turned on his flashing lights as soon as he saw the motorcycle was going to turn into the driveway because the motorcycle was still on a public road at that point. It is unclear whether the driver of the motorcycle stopped because of the flashing lights or whether he previously intended to stop at that location. At no point, did the motorcycle attempt to elude Officer Moore or commit any traffic violation.

     Officer Moore exited his patrol car and approached Defendant, telling Defendant to keep his hands on top of his head. (*Id.* at 4:57:09.) Officer Moore immediately observed knives on the side of Defendant's pants, then conducted a pat search of Defendant, and removed the following weapons from Defendant's person: a Glock 19 handgun with an obliterated serial number, several knives, and brass knuckles. (Bodycam at 4:57:11-5:00:37; Patrolcam at 5:14:41-49; Doc. 24-1.) Officer Moore told Defendant he stopped him because the color of the motorcycle did not match the color listed on the registration. (Bodycam at 5:00:46-50.) Defendant told Officer Moore that as far as he knew the motorcycle's registration was legal. (*Id.* at 5:00:55.) Defendant admitted he was just keeping the old plates on the motorcycle because he was a barred driver. (Patrolcam at 5:14:02-05.) A vehicle identification number ("VIN") check confirmed that the motorcycle was not stolen. (Bodycam at 5:06:26.) Defendant was allowed to try to call his wife so she could take possession of the motorcycle. (*Id.* at 5:19:37-5:21:06.) Defendant was cooperative throughout the stop. (*Id.* at 4:57:10-5:21:06.)

---

[2] Gov. Ex. 1 contains two videos: patrol car camera video and Officer Moore's body camera video. I will cite them as "Patrolcam" and "Bodycam."

Officer Moore testified about some of the reasons that a license plate may be on the wrong vehicle: (1) a vehicle's owner replaces an expired license plate with an unexpired plate from a different vehicle; (2) a vehicle's owner may be suspended, barred, or otherwise restricted from registering a vehicle in Iowa, so the owner takes a license plate from another vehicle and puts it on their vehicle so the vehicle appears to be legally registered; (3) someone purchases a new vehicle, keeps the plates from an old vehicle to use on the new vehicle, and the Iowa Department of Transportation ("IDOT") has not yet completed the official transfer paperwork; (4) someone buys multiple vehicles at the same time and accidentally puts the wrong plates on the individual vehicles; and (5) people put plates from other vehicles on stolen vehicles.

Officer Moore also testified that sometimes vehicle registrations state the wrong vehicle color because people paint their vehicles and do not inform the IDOT about the color change. In addition, someone might give the IDOT the incorrect color when the vehicle is initially registered. When a vehicle color does not match IDOT records, an officer is unable to know whether there is an innocent explanation for the discrepancy without stopping the vehicle. Officer Moore stated that more motorcycles are stolen in the summer than in the winter.

### B. *Additional Facts Adduced at the September 15, 2021 Hearing*

At the hearing, Government Counsel questioned Officer Moore about a series of cases over the year preceding the stop involving vehicles that were a different color or different model from what was stated on their registrations or that had some other license plate/color anomaly that resulted in criminal charges. All of these cases occurred within approximately one mile of where the traffic stop in this case occurred, some of them right behind the house and some within the same block as the house. Officer Moore worked on approximately 85 percent of the cases referenced.

4

On cross examination, Officer Moore admitted that his training and experience had not prepared him to answer questions about the number or percentage of vehicles stolen in Cedar Rapids, Linn County, and Iowa; the percentage of stolen motorcycles that are recovered in Iowa; the number of vehicle thefts and whether they are trending up or down; whether stolen motorcycles account for more than half of all stolen motor vehicles; and similar questions. Despite this, and despite Defense Counsel's assertion that Cedar Rapids has a lower-than-expected rate of motor vehicle thefts based on population, Officer Moore testified that he has to be aware of what is happening in Cedar Rapids, and in Cedar Rapids, motorcycle thefts are "constant."

Mr. Scott Takes, owner of Underground Art Studios, a business specializing in custom painting, especially painting motorcycles, testified as an expert for the defense. Mr. Takes testified that in this area, it is very common to paint motorcycles; that the majority of the motorcycles he paints are Harley Davidsons; and that Harley Davidson manufactures motorcycles altered specifically so that people can repaint them after purchase. Mr. Takes also testified that he has never told a customer to notify the IDOT about a color change to a motorcycle and has never had a customer get into trouble for changing the color of a motorcycle. Mr. Takes further testified that there is a type of paint called chameleon paint that changes colors in different light and can look orange in one light and blue in different light. He also testified that orange is a popular motorcycle color, it is part of the Harley Davidson logo, and he has painted a lot of motorcycles orange over the years.

Ms. Tina Debban, Investigator for the Federal Public Defender's Office, testified that there are currently very few orange motorcycles available for sale in Cedar Rapids based on her survey of three motorcycle sales showrooms. She also testified that statistics from the National Insurance Crime Bureau ("NICB"), an organization that works with law enforcement to deal with insurance fraud crime and motor vehicle crimes, indicate

that although Cedar Rapids is the second-most populous city in Iowa, it is fourth in the state for motor vehicle thefts. Ms. Debban also testified that Iowa Administrative Code Section 761-400.7(321), "Information appearing on title or registration," does not require vehicle owners to update their registration when they change the color of their vehicles. Ms. Debban spoke to Investigator Brad Nelson, a thirty-five-year veteran of the IDOT, who confirmed there is no such requirement. Mr. Nelson dismissed the importance of color on a registration document, noting that sometimes IDOT staff even input the wrong vehicle color into the system. Ms. Debban also testified that according to the NICB, the rate of motorcycle theft has decreased 12 percent in Iowa in the past four years, that motorcycles only make up six-to-seven percent of all stolen motor vehicles in the state, and that Harley Davidson ranks as the third-most-often-stolen brand of motorcycle in Iowa. She also testified that because Iowa ranks 31/50 in population and 33/50 in motor vehicle thefts, the state has a lower-than expected rate of motor vehicle thefts. Ms. Debban further testified that Cedar Rapids also has a lower-than-expected rate of motor vehicle thefts when compared to cities of similar size, i.e., cities between 100,000 and 250,000 population, in 2019.

Additional facts will be discussed as necessary.

### III. DISCUSSION

*A. The Parties' Positions*

Defendant argues that if I find there was no reasonable suspicion for the stop, everything he said during and after the stop and all evidence seized during the stop must be suppressed. Thus, the issue is whether Officer Moore had reasonable suspicion or probable cause to stop the motorcycle.

Defendant argues that Officer Moore lacked reasonable suspicion or probable cause to stop him on July 18, 2020. Defendant argues that absent a moving violation or problem with the motorcycle's license plate, the stop was unconstitutional because (1)

6

there is no law in Iowa requiring a vehicle owner to update his registration if he changes his vehicle's color and (2) there is a lack of evidence supporting the assertion that a color discrepancy relates to vehicle thefts. (Doc. 24-2 at 4.) Thus, Defendant argues that Officer Moore acted on a hunch when he stopped him on July 18, 2020. (*Id.* at 5.)

The Government resists the motion and argues that Officer Moore had reasonable suspicion that the motorcycle Defendant was riding was stolen or that Defendant was riding the motorcycle without a proper registration or fraudulently using the wrong license plate in violation of Iowa Code Section(s) 321.98, 99, and/or 100. (Doc. 29 at 9-12.)

## B.     *Legal Standards*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The Fourth Amendment prohibits unreasonable searches and seizures by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *United States v. Cortez*, 449 U.S. 411, 417 (1981); *Terry v. Ohio*, 392 U.S. 1, 9 (1968)) (internal quotations omitted). "A traffic stop constitutes a seizure for purposes of the Fourth Amendment and therefore must be supported by probable cause or reasonable suspicion." *United States v. Givens*, 763 F.3d 987, 989 (8th Cir. 2014) (citing *United States v. Hollins*, 685 F.3d 703, 705-06 (8th Cir. 2012)). Reasonable suspicion is based on the totality of the circumstances and requires a "particularized and objective basis" for suspecting legal wrongdoing before a stop can be justified. *United States v. Patrick*, 776 F.3d 951, 954 (8th Cir. 2015) (quoting *Cortez*, 449 U.S. at 417). A hunch does not constitute reasonable suspicion to justify a stop. *Wilson v. Lamp*, 901 F.3d 981, 986 (8th Cir. 2018) (citing *Terry*, 392 U.S. at 27).

However, "[e]ven an officer's incomplete initial observations may give reasonable suspicion for a traffic stop." *Givens*, 763 F.3d at 989 (quoting *Hollins*, 685 F.3d at 706).

"A law enforcement officer whose observations lead him or her reasonably to suspect that a particular person has been or is about to be engaged in criminal activity may stop that person to investigate the circumstances that provoke suspicion." *United States v. Smart*, 393 F.3d 767, 770 (8th Cir. 2005) (citing *Arvizu*, 534 U.S. at 273; *Johnson v. Crooks*, 326 F.3d 995, 998 (8th Cir. 2003)). Even innocuous actions may give rise to reasonable suspicion under the totality of the circumstances. *United States v. Condelee*, 915 F.2d 1206, 1209 (8th Cir. 1990) (opining that "there could be 'circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot'") (quoting *Reid v. Georgia,* 448 U.S. 438, 441 (1980)). In the context of registration requirements, a police officer may stop a vehicle only when the officer has "at least articulable and reasonable suspicion that a motorist is unlicensed or that the [vehicle] is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law." *Delaware v. Prouse*, 440 U.S. 648, 663 (1979).

*United States v. Harvey* succinctly articulated the concept of reasonable suspicion in the context of a traffic stop in a case similar to the one at bar:

> The concept of "reasonable suspicion" is not "readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. 213, 232, 103 S. Ct. 2317, 2329 (1983). In large part, common sense dictates the analysis of reasonable suspicion.
>> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behaviors; jurors as fact-finders are permitted to do the same and so are law enforcement officers.
> 
> *United States v. Cortez,* 449 U.S. 411, 418, 101 S. Ct. 690, 695 (1981). Inherent in the concept of reasonable suspicion is the fact that officers may be mistaken in their beliefs. The keystone in such cases hinges on

8

reasonableness. Under the law, "a reasonable but mistaken belief may justify an investigative stop." *United States v. Bailey,* 417 F.3d 873, 877 (8th Cir. 2005). *See also United States v. Garcia–Acuna,* 175 F.3d 1143, 1147 (9th Cir. 1999) ("A mistaken premise can furnish grounds for a *Terry* stop, if the officers do not know that it is mistaken and are reasonable in acting upon it.").

No. 14-00029-11-CR-W-GAF, 2015 WL 1197918, at *4 (W.D. Mo. Mar. 16, 2015).

*C.   Analysis*

*1.   Reasonable Suspicion or Probable Cause for the Stop*

The issue is whether Officer Moore had reasonable suspicion or probable cause sufficient to perform the traffic stop of the motorcycle based on the discrepancy between the color of the vehicle and the color stated in the registration. Iowa law does not require vehicle owners to amend vehicle registrations if they paint their vehicles. *See* Iowa Code § 321.41 (explaining circumstances under which registration changes must be registered with the state). Both parties cite cases from other jurisdictions to support their respective arguments.

Defendant cites cases in which courts found no reasonable suspicion for traffic stops based on suspicion that the vehicles were stolen when there were discrepancies between the color of the vehicles and what was listed on their registrations. *See Schneider v. State*, 459 S.W.3d 296, 297, 299 (Ark. 2015) (officer conducted traffic stop to check whether car was painted or stolen); *City of Billings v. Rodriguez*, 456 P.3d 570, 573 (Mont. 2020); *Commonwealth v. Mason*, No. CR09000576–00, 2009 WL 7339900, at *1-3 (Va. Cir. Ct. 2009) ("Upholding a stop on these facts would permit law enforcement to make a random, suspicionless stop of any car with a color disparity on its registration. The Fourth Amendment does not afford the police such unbridled discretion."), *affirmed* Record No. 1956–09–2*,* 2010 WL 768721 (Va. Ct. App. Mar. 9, 2010) (unpublished

9

opinion).³ In four of the cases cited by Defendant, the stops were conducted to check the vehicle registration because the color on the registration did not match the color of the vehicle. *See United States v. Uribe*, 709 F.3d 646, 654 (7th Cir. 2013) (government did argue the possibility of theft in response to defendant's motion to suppress); *United States v. Campa*, CR 13-2142-TUC-JAS(JR), 2014 U.S. Dist. LEXIS 130327, at *1, *9 (D. Ariz. Aug. 27, 2014) (noting that "the color discrepancy alone would unlikely be enough to support a stop"), *R. & R. adopted*, 2014 U.S. Dist. LEXIS 130331 (D. Ariz. Sept. 17, 2014); *State v. Teamer*, 151 So. 3d 421, 427-28 (Fla. 2014); *State v. O'Niell*, No. 06-S-3456,-57, 2007 N.H. Super. LEXIS 2, at *8 (N.H. Super. Ct. Apr. 17, 2007) (stop conducted to check color discrepancy).

Although the court never reached the question of reasonable suspicion in the case, *see supra* note 3, *United States v. Rodgers* summarized the reasoning of all the cited courts: "[C]olor discrepancy and [driving in a] high-crime location, even when considered cumulatively, at best, provide a thin basis for reasonable suspicion that the car was stolen." 656 F.3d 1023, 1027 (9th Cir. 2011); *see also Teamer*, 151 So. 3d at 427-28 ("[T]he color discrepancy here is not 'inherently suspicious' or 'unusual' enough or so 'out of the ordinary' as to provide an officer with a reasonable suspicion of criminal activity, especially given the fact that it is not against the law in Florida to change the color of your vehicle without notifying the DHSMV").

Defendant also cites *United States v. Cooper*, 431 Fed. App'x 399, 401-02 (6th Cir. 2011) (unpublished opinion) as a "*compare*" citation. (Doc. 24-2 at 3.) *Cooper*

---

³ *United States v. Rodgers*, also cited by Defendant, did not hold that color discrepancy was not a reason to conduct a traffic stop. 656 F.3d 1023, 1027 (9th Cir. 2011). *Rodgers* never reached the question, instead holding that whether reasonable suspicion existed to stop the defendant's vehicle was "an exceedingly close question that we need not answer here. Because we reverse the district court's denial of Rodgers' suppression motion on a separate ground, we will assume, without deciding, that reasonable suspicion supported the stop." *Id*.

10

held that because a vehicle was in a high-crime area where car thefts were frequent and the officer testified that color discrepancies are tied to car thefts, the officer had reasonable suspicion for the traffic stop at issue. *Id.*

Unsurprisingly, the Government cites cases where the courts held that a discrepancy between the color of a vehicle and the color listed on the registration provided officers with reasonable suspicion for a traffic stop. *See State v. Hawkins*, 140 N.E.3d 577, 582 (Ohio 2019) (when officer's training and experience informed him that car thieves in area had stolen vehicle and switched plates with same make and model, officer reasonably suspected criminal activity when color did not match registration), *reconsideration denied*, 137 N.E.3d 109, *cert. denied*, 140 S. Ct. 2766 (2020); *Andrews v. State*, 658 S.E.2d 126-28 (Ga. Ct. App. 2008); *State v. Creel*, No. 38658, 2012 WL 9494147, at *2 (Idaho Ct. App. Aug. 7, 2012) (unpublished opinion); *Smith v. State*, 713 N.E.2d 338, 342 (Ind. Ct. App. 1999). *Creel* articulated the reasoning of the courts:

> [The deputy] further testified that, due to this discrepancy, the vehicle could have had fictitious license plates in violation of I.C. § 49-456(3), or the vehicle could have been stolen and the plates were from another S-10 pickup. Thus, the deputy had articulable facts within his knowledge and drew reasonable inferences based on his experience. Under a totality of the circumstances, the deputy had a reasonable and articulable suspicion to initiate the stop.

2012 WL 9494147 at *2; *see also United States v. Caro*, 248 F.3d 1240, 1246 (10th Cir. 2001) (although vacating district court's denial of the defendant's motion to suppress evidence because officer did not have sufficient cause to enter passenger compartment of vehicle to examine VIN when VIN was readable from outside of vehicle stating that color discrepancy between vehicle and registration provided reasonable suspicion that car was stolen and that valid VIN did not dispel that suspicion given other evidence adduced during the stop).

Finally, the Government cites *State v. Thiel*, in which the Iowa Court of Appeals addressed a situation identical to the one at bar: a motorcycle was stopped only because its color did not match the color listed on its registration. Nos. 01-0029, 1-486, 2001 WL 1448490 (Iowa Ct. App. 2001), at *1 (unpublished). The court held that the trooper had reasonable suspicion to conduct a traffic stop, stating the following:

> As noted earlier, an investigatory stop of a motor vehicle must be supported by reasonable cause. [*State v.*] *Haviland*, 532 N.W.2d [767,] 768 [(Iowa 1995)]. Reasonable cause includes indications that "a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law. . . ." *Prouse*, 440 U.S. at 663, 99 S. Ct. at 1401, 59 L. Ed. 2d at 673. The State correctly notes that Iowa's motor vehicle registration law requires an accurate description of the vehicle. Iowa Code § 321.20(2).[4] It is also unlawful to improperly display motor vehicle registration plates. Iowa Code § 321.100(4). Under these circumstances, we find a potential violation of either of these provisions provided the state trooper with reasonable cause to stop Thiel's motorcycle.

*Id.* at *2.

Three Iowa statutes are implicated by this traffic stop. Iowa Code Section 321.98 provides:

---

[4] Neither the current version of Iowa Code Section 321.20(1) nor the versions of Section 321.20(2) possibly in effect at the time *Thiel* was decided state that an application for registration and certificate of title must state the color of the vehicle. However, all relevant versions of Section 321.20 state that an application may be required to include "[s]uch other information as may reasonably be required by the department." *Compare* Iowa Code § 321.20(1)(c) *with* the 2001 version of §§ 321.20(2),(3), available at https://www.legis.iowa.gov/docs/shelves/code/ocr/2001%20Iowa%20Code.pdf, p. 2884 *and* the 1999 version of §§ 321.20(2),(3), available at https://www.legis.iowa.gov/docs/shelves/code/ocr/1999%20Iowa%20Code.pdf, p. 2723. Iowa Administrative Rule 761-400.3(321) at 400.3(8), "Application for certificate of title or registration of a vehicle, Vehicle color," requires an application for a certificate of title or registration for a vehicle to include the vehicle color. In addition, Iowa Administrative Rule 761-400.7(321) at 400.7(4), "Information appearing on title or registration," requires the color to appear on a vehicle's title or registration.

1. Except as otherwise expressly permitted in this chapter, a person shall not operate and an owner shall not knowingly permit to be operated upon any highway any vehicle required to be registered and titled under this chapter unless:
    a. A valid registration card and registration plate or plates issued for the vehicle for the current registration year are attached to and displayed on the vehicle when and as required by this chapter; and
    b. A certificate of title has been issued for the vehicle.
2. Any violation of this section is a simple misdemeanor. . . .

Iowa Code Section 321.99 provides the following:

A person shall not knowingly lend to another a registration card, registration plate, special plate, or permit issued to the person if the other person desiring to borrow the card, plate, or permit would not be entitled to the use of it. A person shall not knowingly permit the use of a registration card, registration plate, special plate, or permit issued to the person by one not entitled to it, nor shall a person knowingly display upon a vehicle a registration card, registration plate, special plate, or permit not issued for that vehicle under this chapter. A person convicted of a violation of this section is guilty of a simple misdemeanor. . . .

Iowa Code Section 321.100 provides, in pertinent part,

It is a fraudulent practice for any person to commit any of the following acts:

. . .

4. To hold or use any certificate of title, manufacturer's or importer's certificate, registration card, registration plate, manufacturer's vehicle identification plate, or permit issued by the department or county treasurer, for any vehicle to which such document or plate is not legally assigned.

This appears to be a case of first impression in this circuit, although not among our sister districts. In *Harvey*, the Western District of Missouri held that an officer had reasonable suspicion to stop a gray vehicle that was registered as red that was parked at a residence associated with possible narcotics activity and with a recent stolen vehicle.

13

2015 WL 1197918, at *1, *5. In so doing, *Harvey* relied on cases where courts addressed a discrepancy between the color of the vehicle and the color listed on the registration. *Id.* at *4 (citing *Cooper*, 431 Fed. App'x. at 400) ("officers had reasonable suspicion to stop a silver Toyota after they checked the registration and learned that it was listed as a red Toyota since 'a discrepancy between a car's actual color and the color recorded on its registration often suggests a stolen vehicle'"); *United States v. Judkins*, 39 Fed. App'x. 874, 875 (4th Cir. 2002) (per curiam ) ("officer had reasonable suspicion to stop pink Mazda van after a computer check showed the license plate was registered to a white Mazda van because the officer knew that 'the occupants of vehicles bearing license plates that are registered to different vehicles often are involved in criminal activity'"); *Caro*, 248 F.3d at 1246 ("an officer's determination that car color differed from the registration-reported color 'suggest[ed] that [the officer] should have taken all appropriate steps to ascertain the legal status of the car'")) (all alterations in original; all parentheticals quoted from original).

I find that Officer Moore had reasonable suspicion to stop Defendant on July 18, 2020. The motorcycle Defendant was riding did not match the color listed on the registration. Defendant was riding in a neighborhood where Officer Moore testified he had been involved in a number of other cases within the past year and within approximately one mile from where he stopped Defendant involving vehicles with license plates that did not match their registrations, either because the vehicle model or vehicle color was incorrect, and those vehicle stops resulted in criminal charges. For example, one case involved a blue Harley Davidson motorcycle with a license plate that came back registered to a black Harley Davidson. Another case involved a white Dodge Dakota pickup whose license plate belonged to a black Ford pickup. A third case involved a gray Nissan Ultima whose license plate belonged to a gold Lexus. In another case, the license plate for a maroon Saturn L200 came up in the system as returned, rendering the

plate no longer valid. In addition, the sticker on that plate was the sticker for a Monte Carlo and the sticker color was inconsistent with the expiration year. Another case involved a gray Chevrolet Blazer bearing the license plate belonging to a beige Chevrolet Blazer. Another case involved a Ford Econoline van that had the license plate for an Oldsmobile Intrigue. The sticker on the license plate was for a blue Hyundai Sonata. All these cases resulted in charges under Iowa Code Section 321.99 and, in many of the cases, other charges including driving while barred and theft.

Officer Moore also testified about three cases he was either involved in or cases he knew of where stolen cars or motorcycles were located at 2003 Third Street S.W., the site of the traffic stop. Two cases involved vehicles that had been repainted or were different colors from those stated on their registrations.

With this knowledge, Officer Moore's "reasonable but mistaken belief" that the orange motorcycle did not match the registration justified an investigative stop. *United States v. Bailey*, 417 F.3d 873, 877 (8th Cir. 2005). The only way Officer Moore could ascertain whether the motorcycle was a different color than the one listed on the registration for an innocent reason or because someone had violated the law was to stop the vehicle. Although Defendant argues that Officer Moore stopped his motorcycle based on a mere hunch, I find that was not the case. As noted above, it is illegal in Iowa to operate a vehicle displaying a plate that is not issued for that vehicle. Iowa Code § 321.99. Officer Moore knew this, knew he was patrolling in an area were he had been involved in, or was aware of, many cases involving vehicles displaying incorrect license plates where the vehicles were painted to disguise their true identity. Officer Moore was not required to ignore what he knew about the criminal history of the area. *See Hawkins*, 140 N.E.3d at 582 ("To assign noncriminal behavior no weight would seriously undercut the totality of the circumstances principle which governs the existence vel non of reasonable suspicion. Behavior and circumstances that are noncriminal by nature may be

15

unremarkable in one instance while quite unusual in another. An officer is entitled to make an assessment of the situation in light of his specialized training and familiarity with the customs of the area's inhabitants.") (internal citations, quotation marks, and ellipses omitted). "Accordingly, [Officer Moore] had a basis for believing the [motorcycle] to be a different color than that listed on the registration, and it was reasonable for him to infer that the license plate may have been switched from another [motorcycle.] Under these circumstances, [I] cannot say that [he] acted on a mere hunch." *Andrews*, 658 S.E.2d at 128 (footnotes omitted); *Wilson*, 901 F.3d at 986.

Although Defendant's witnesses credibly testified about how common it is to paint motorcycles, the current low inventory of orange motorcycles for sale in Cedar Rapids, and Iowa's statistically-lower-than-average motor vehicle theft rate compared to other states, none of that evidence obviates what Officer Moore gleaned from the facts before him at the time or, more importantly, what any reasonable officer in his position would have gleaned from the facts before him at the time: a motorcycle that did not match the registration, which may have been painted in an attempt to hide the motorcycle's true origin, located in a neighborhood known for vehicle crime involving stolen and altered license plates. *See Patrick*, 776 F.3d at 954 (reasonable suspicion requires a "particularized and objective basis" for suspecting legal wrongdoing) (quoting *Cortez*, 449 U.S. at 417); *Thiel*, 2001 WL 1448490 at *2 (a *potential* violation of Iowa Code Sections 321.20(2) or 321.100(4) gave trooper reasonable cause to stop motorcycle). Officer Moore testified there was no way to discover whether a crime had been committed except to stop the motorcycle.[5]

The testimony Defendant elicited regarding the statistical occurrence of motorcycle thefts in Cedar Rapids as well as the prevalence of orange motorcycles or

---

[5] In addition, although Mr. Takes testified that chameleon paint can look both blue and orange, Defendant does not argue that his motorcycle was painted with chameleon paint.

repainted motorcycles is interesting, but not conclusive in resolving the issue before the Court. The statistical frequency of a given crime's occurrence may play a part in an officer's assessment of probable cause. For example, a carjacking may be a relatively rare occurrence in Cedar Rapids, Iowa. But if an officer observes circumstances consistent with a carjacking knowing full well such a crime is very rare, it would not be prudent to ignore that evidence merely because the officer knows such events are statistically improbable. In the case at bar, even if Officer Moore was fully aware of the statistics about motorcycle theft and the common practice of painting motorcycles, he was not obligated to ignore his own experience and evidence of a possible crime. As quoted above:

> In large part, common sense dictates the analysis of reasonable suspicion. The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behaviors; jurors as fact-finders are permitted to do the same and so are law enforcement officers.

*Harvey*, 2015 WL 1197918, at *4 (quoting *Cortez*, 449 U.S. at 418). Officer Moore's assessment may not have been informed by statistics gathered by the NICB, the expert testimony of motorcycle painter, or a survey of motorcycle showroom floors, but it was adequately informed by his experience and common sense.

### 2. *Possible Mistake of Fact Regarding Whether Motorcycle was Stolen*

As it turned out, the motorcycle Defendant was riding was not stolen, merely re-painted. I further find that even if Officer Moore thought the motorcycle was stolen due to the discrepancy between the license plate and the description in the registration, for all the reasons articulated above, that mistake was objectively reasonable. *Bailey*, 417 F.3d at 877; *United States v. Williams*, 929 F.3d 539, 544 (8th Cir. 2019) ("A law enforcement officer has reasonable suspicion [to conduct an investigatory stop] when the officer is

17

aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.") (quoting *Hollins*, 685 F.3d at 706). "[I]n mistake cases the question is simply whether the mistake, whether of law or of fact, was an objectively reasonable one." *Smart*, 393 F.3d at 770; *see also Heien v. North Carolina*, 574 U.S. 54, 61 (2014) (stating that the Fourth Amendment allows for constitutionally valid searches and seizures based on reasonable mistakes of law and fact). This determination "is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time." *Smart*, 393 F.3d at 770 (internal citation omitted). As discussed above, at the time, Officer Moore knew the color of the motorcycle did not match the description in the registration and knew there had been many instances of vehicles being stopped in the area when their colors did not match the colors listed on their registrations. Many of these stops resulted in finding barred drivers and stolen vehicles. Under these circumstances, a reasonable officer would have stopped the motorcycle to ask about the color discrepancy, even though a vehicle owner is not required to inform the IDOT when a vehicle is painted a different color. *See Smart*, 393 F.3d at 770 (reversing suppression of evidence found in stop of vehicle with missing front license plate and stating that reasonable suspicion exists when an officer's "observations lead him or her reasonably to suspect that a particular person has been or is about to be engaged in criminal activity"); *Thiel*, 2001 WL 1448490 at *2.

### 3. *Permissibility of Pat Search*

I also find that Officer Moore was permitted to pat search Defendant once he made the stop. A pat search is permissible if two conditions are met: (1) "the investigatory stop must be lawful," and (2) the "officer must reasonably suspect that the person stopped is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 326 (2009); *United States v. Reddick*, 910 F.3d 358, 362 (8th Cir. 2018) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).

"The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Reddick*, 910 F.3d at 362 (quoting *United States v. Oliver*, 550 F.3d 734, 738 (8th Cir. 2008) (quoting *Terry*, 392 U.S. at 27 (1968)). Reasonableness is determined by the totality of the circumstances as judged by the "facts such as the time of day, the suspects' location, and their behavior when they become aware of the officer's presence, considered together with the inferences and deductions made by the officer." *United States v. Davison*, 808 F.3d 325, 330 (8th Cir. 2015) (citing *Bailey*, 417 F.3d at 877). The "purpose of [a pat search] is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence[,]" and therefore must "be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) (internal citations and quotations omitted).

In the instant case, I have determined that the stop was lawful. I now find that based on the totality of the circumstances, Officer Moore reasonably suspected Defendant was armed. At the inception of the stop, Officer Moore saw knives in plain view on the side of Defendant's pants, which would lead a reasonably prudent person alone in the dark to believe his safety was in danger if Defendant was not disarmed. (Bodycam at 4:57:11.) In addition, during the pat search, Defendant told Officer Moore where he could find additional weapons and tools that could be used as weapons in his clothing. (*Id.* at 4:57:21-5:00:39.) Officer Moore seized those items. (*Id.*)

### 4. *Conclusion*

Based on the above discussion, I find that Officer Moore had reasonable suspicion to stop Defendant and to conduct a pat search of Defendant for weapons.

## IV. CONCLUSION

For the reasons set forth above, I respectfully recommend the District Court **DENY** Defendant's Motion to Suppress. **(Doc. 24.)**

Objections to this Report and Recommendation in accordance with 28 U.S.C. Section 636(b)(l) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise,* 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** at Cedar Rapids, Iowa, this 28th day of September, 2021.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa