# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 21-CR-14-CJW-MAR |
| vs. | **ORDER** |
| JOSHUA BROWN, | |
| Defendant. | |

## I. INTRODUCTION

This matter is before the Court on defendant's Objections (Doc. 43) to the Report and Recommendation (Doc. 37) of the Honorable Mark A. Roberts, United States Magistrate Judge. On August 3, 2021, defendant filed a Motion to Suppress. (Doc. 24). The government timely resisted the motion. (Doc. 29). On September 15, 2021, Judge Roberts held a hearing on the motion (Doc. 36) and on September 28, 2021, Judge Roberts issued his Report and Recommendation ("R&R"), recommending that the Court deny defendant's motion. (Doc. 37). On October 7, 2021, the government filed a timely objection to the R&R. (Doc. 40). On October 12, 2021, defendant timely filed his objections to the R&R. (Doc. 43).

For the following reasons, the Court **overrules in part and sustains in part** defendant's objections, **adopts** Judge Roberts' R&R with minor modifications, and **denies** defendant's Motion to Suppress.

## II. STANDARD OF REVIEW

The Court reviews Judge Roberts' R&R under the statutory standards found in Title 28, United States Code, Section 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

*See also* FED. R. CIV. P. 72(b) (stating identical requirements). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review de novo any issue in a magistrate judge's report and recommendation at any time. *Id*. If a party files an objection to the magistrate judge's report and recommendation, the district court must review the objected portions de novo. 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate [judge]'s report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

De novo review is non-deferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991); *see also Doe v. Chao*, 540 U.S. 614, 620–19 (2004) (noting de novo review is "distinct from any form of deferential review"). The de novo review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'"

*United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94–1609, at 3, reprinted in 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect Section 636(b))). Thus, although de novo review generally entails review of an entire matter, in the context of Section 636 a district courts required de novo review is limited to "de novo determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1).

Consequently, the Eighth Circuit Court of Appeals has indicated de novo review would only be required if objections were "specific enough to trigger de novo review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger de novo review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate [judge]." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit Court of Appeals has concluded that general objections require "full de novo review" if the record is concise. *Id*. Even if the reviewing court must construe objections liberally to require de novo review, it is clear to this Court that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Ass'n, Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996).

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996); *see also Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Federal Rule of Civil Procedure 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting de novo review with

3

"clearly erroneous standard" of review, and recognizing de novo review was required because objections were filed).

The Court is unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985) (citation omitted). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Med. Clinic, P.C.*, 498 F.3d 837, 847 (8th Cir. 2007), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

Even though some "lesser review" than de novo is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads this Court to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* FED. R. CIV. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, the Court believes one further caveat is necessary: a district court always remains free to render its own decision under de novo review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153–54. Thus,

although a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and the district court may choose to apply a less deferential standard.

### III. FACTUAL BACKGROUND

Based on the evidence submitted and testimony elicited at the suppression hearing, Judge Roberts made extensive factual findings. With limited exception, defendant does not object to these findings,[1] so the Court reviews them for plain error. On review, the Court finds that Judge Roberts thoroughly and accurately summarized the relevant facts in his R&R except as otherwise noted. (Doc. 37, at 2–6). Thus, the Court adopts and incorporates the R&R's factual findings with minor modifications.

#### A. Facts Related to the Events of July 18, 2020

> The following facts are deduced from the hearing testimony of CRPD Officer Kyzer Moore, unless otherwise noted. Officer Moore has been employed by the CRPD for four years. I found him to be a credible witness.
>
> At approximately 4:55 a.m. on July 18, 2020, Officer Moore was on patrol on the southwest side of Cedar Rapids, Iowa. The neighborhood had been the site of several crimes involving switched vehicle license plates and/or repainted vehicles to disguise stolen vehicles in the past year. Officer Moore had been involved in several of these cases. Officer Moore was driving west on Wilson Avenue when he met an orange motorcycle going east. The motorcycle caught his attention because it was the only vehicle out at that time of day. The motorcycle did not commit any traffic violations and its license plate was properly displayed. Officer Moore ran the license plate of the motorcycle and it came back registered to a 2004

---

[1] Defendant does object to some of the conclusions Judge Roberts reached in light of the facts he found, to Judge Roberts' characterization of some evidence, and defendant asserts that Judge Roberts should have found additional facts. (Doc. 43, at 1-4). The only facts defendant objects to is that "vehicle theft in Cedar Rapids is 'constant'" and "that motorcycles make up between six and seven percent of stolen vehicles." (*Id.*, at 4). The Court will address Judge Roberts' conclusions and characterizations in the analysis section of this order and will address defendant's factual objections in the recitation of facts below.

blue Harley Davidson motorcycle. The registration did not indicate that the owner of the motorcycle was a barred driver or otherwise should not be driving. [Defendant's license plate was not hidden or obscured, was properly displayed, was not expired, defendant did not attempt to elude Officer Moore, and Officer Moore had no reason to believe the make of the motorcycle did not match the registration.][2]

Officer Moore admitted that he could not discern the make of the motorcycle.[3] However, because the color did not match the one on the registration, he turned around and followed the motorcycle as the car turned onto Third Street S.W. The motorcycle then turned onto 20th Avenue S.W. and then turned right into the back alley driveway for the house at 2003 Third Street S.W. ("the house"), which is the first driveway off of 20th Avenue S.W. Defendant knew the owner of the house. (Bodycam at 5:13:47).[4]

Officer Moore turned on his flashing lights as soon as he saw the motorcycle was going to turn into the driveway because the motorcycle was still on a public road at that point. It is unclear whether the driver of the motorcycle stopped because of the flashing lights or whether he previously intended to stop at that location. At no point, did the motorcycle attempt to elude Officer Moore or commit any traffic violation.

Officer Moore exited his patrol car and approached Defendant, telling Defendant to keep his hands on top of his head. (*Id.* at 4:57:09). Officer Moore immediately observed knives on the side of Defendant's pants, then conducted a pat search of Defendant, and removed the following weapons from Defendant's person: a Glock 19 handgun with an obliterated serial number, several knives, and brass knuckles. (Bodycam at 4:57:11-5:00:37; Patrolcam at 5:14:41-49; Doc. 24-1). Officer Moore told Defendant he stopped him because the color of the motorcycle did not match the color listed on the registration. (Bodycam at 5:00:46-50). Defendant told Officer Moore that as far as he knew the motorcycle's registration was

---

[2] The Court added the bracketed language, sustaining defendant's objection (Doc. 43, at 2) that the record shows these additional facts.

[3] Officer Moore testified that it is more difficult for him to discern the make of a motorcycle than the make of an automobile. [Footnote in R&R].

[4] Gov. Ex. 1 contains two videos: patrol car camera video and Officer Moore's body camera video. I will cite them as "Patrolcam" and "Bodycam." [Footnote in R&R].

6

legal. (*Id.* at 5:00:55). Defendant admitted he was just keeping the old plates on the motorcycle because he was a barred driver. (Patrolcam at 5:14:02-05). A vehicle identification number ("VIN") check confirmed that the motorcycle was not stolen.[5] (Bodycam at 5:06:26). Defendant was allowed to try to call his wife so she could take possession of the motorcycle. (*Id.* at 5:19:37-5:21:06). Defendant was cooperative throughout the stop. (*Id.* at 4:57:10-5:21:06).

Officer Moore testified about some of the reasons that a license plate may be on the wrong vehicle: (1) a vehicle's owner replaces an expired license plate with an unexpired plate from a different vehicle; (2) a vehicle's owner may be suspended, barred, or otherwise restricted from registering a vehicle in Iowa, so the owner takes a license plate from another vehicle and puts it on their vehicle so the vehicle appears to be legally registered; (3) someone purchases a new vehicle, keeps the plates from an old vehicle to use on the new vehicle, and the Iowa Department of Transportation ("IDOT") has not yet completed the official transfer paperwork; (4) someone buys multiple vehicles at the same time and accidentally puts the wrong plates on the individual vehicles; and (5) people put plates from other vehicles on stolen vehicles.

Officer Moore also testified that sometimes vehicle registrations state the wrong vehicle color because people paint their vehicles and do not inform the IDOT about the color change. In addition, someone might give the IDOT the incorrect color when the vehicle is initially registered. When a vehicle color does not match IDOT records, an officer is unable to know whether there is an innocent explanation for the discrepancy without stopping the vehicle. Officer Moore stated that more motorcycles are stolen in the summer than in the winter.

### B. Additional Facts Adduced at the September 15, 2021 Hearing

At the hearing, Government Counsel questioned Officer Moore about a series of cases over the year preceding the stop involving vehicles that were a different color or different model from what was stated on their registrations or that had some other license plate/color anomaly that resulted in criminal charges. [Most] of these cases occurred within approximately one mile of where the traffic stop in this case occurred, some of them right

---

[5] Nor was it reported as stolen. (Tr., at 57).

behind the house and some within the same block as the house.[6]  Officer Moore worked on approximately 85 percent of the cases referenced.

[For example, one case involved a blue Harley Davidson motorcycle with a license plate that came back registered to a black Harley Davidson. Another case involved a white Dodge Dakota pickup whose license plate belonged to a black Ford pickup.  A third case involved a gray Nissan Ultima whose license plate belonged to a gold Lexus.  In another case, the license plate for a maroon Saturn L200 came up in the system as returned, rendering the plate no longer valid.  In addition, the sticker on that plate was the sticker for a Monte Carlo and the sticker color was inconsistent with the expiration year.  ~~Another case involved a gray Chevrolet Blazer bearing the license plate belonging to a beige Chevrolet Blazer.  Another case involved a Ford Econoline van that had the license plate for an Oldsmobile Intrigue.  The sticker on the license plate was for a blue Hyundai Sonata.~~  All these cases resulted in charges under Iowa Code Section 321.99 and, in many of the cases, other charges including driving while barred and theft.  Officer Moore also testified about three cases he was either involved in or cases he knew of where stolen cars or motorcycles were located at 2003 Third Street S.W., the site of the traffic stop.  Two cases involved vehicles that had been repainted or were different colors from those stated on their registrations.][7]

On cross examination, Officer Moore admitted that his training and experience had not prepared him to answer questions about the number or percentage of vehicles stolen in Cedar Rapids, Linn County, and Iowa; the percentage of stolen motorcycles that are recovered in Iowa; the number of vehicle thefts and whether they are trending up or down; whether stolen motorcycles account for more than half of all stolen motor vehicles; and similar questions.  Despite this, and despite Defense Counsel's assertion that Cedar Rapids has a lower-than-expected rate of motor vehicle thefts

---

[6] In the government's objection to the R&R, the government noted that "most of these cases occurred within approximately one mile of where the traffic stop in this case occurred, but not all of these cases were within this area."  (Doc. 40, at 1).  The government noted that the officer's testimony about four of them did not mention the location.  (Id.).  The Court sustains the government's objections and has modified the factual findings accordingly.

[7] This portion of Judge Roberts' factual findings appear at pages 14-15 of his R&R, but the Court finds it best to include these additional factual findings in this summary because it provides greater detail and context for Officer Moore's suspicions.

8

based on population, Officer Moore testified that he has to be aware of what is happening in Cedar Rapids, and in Cedar Rapids, motorcycle thefts are "constant."[8]

Mr. Scott Takes, owner of Underground Art Studios, a business specializing in custom painting, especially painting motorcycles, testified as an expert for the defense. Mr. Takes testified that in this area, it is very common to paint motorcycles; that the majority of the motorcycles he paints are Harley Davidsons; and that Harley Davidson manufactures motorcycles altered specifically so that people can repaint them after purchase. Mr. Takes also testified that he has never told a customer to notify the IDOT about a color change to a motorcycle and has never had a customer get into trouble for changing the color of a motorcycle. Mr. Takes further testified that there is a type of paint called chameleon paint that changes colors in different light and can look orange in one light and blue in different light. He also testified that orange is a popular motorcycle color, it is part of the Harley Davidson logo, and he has painted a lot of motorcycles orange over the years.

Ms. Tina Debban, Investigator for the Federal Public Defender's Office, testified that there are currently very few orange motorcycles available for sale in Cedar Rapids based on her survey of three motorcycle sales showrooms. She also testified that statistics from the National Insurance Crime Bureau ("NICB"), an organization that works with law enforcement to deal with insurance fraud crime and motor vehicle crimes, indicate that although Cedar Rapids is the second-most populous city in Iowa, it is fourth in the state for motor vehicle thefts. Ms. Debban also testified that Iowa Administrative Code Section 761-400.7(321), "Information appearing on title or registration," does not require vehicle owners to update their registration when they change the color of their

---

[8] Defendant objects to these findings of fact, arguing that defense counsel's "assertion" should be found to be a fact and that Officer Moore's testimony that motorcycle thefts are "constant" should be found untrue. (Doc. 43, at 4). The Court overrules defendant's objections. Questions by counsel are not fact. Regardless, Judge Roberts later found that "Defendant's witnesses credibly testified about . . . Iowa's statistically-lower-than-average motor vehicle theft rate compared to other states[.]" (Doc. 37, at 16). Thus, although Judge Roberts correctly described defense counsel's question as an assertion and not a fact itself, he later found that fact when referencing defendant's evidence. Further, Judge Roberts' R&R recites Officer Moore's testimony; Judge Roberts did not necessarily find that motorcycle thefts are, in fact, constant. Rather, Judge Roberts merely noted Officer Moore's testimony.

9

vehicles. Ms. Debban spoke to Investigator Brad Nelson, a thirty-five-year veteran of the IDOT, who confirmed there is no such requirement. Mr. Nelson dismissed the importance of color on a registration document, noting that sometimes IDOT staff even input the wrong vehicle color into the system. Ms. Debban also testified that according to the NICB, the rate of motorcycle theft has decreased 12 percent in Iowa in the past four years, that [golf carts, ATVs and] motorcycles [combined] only make up six-to-seven percent of all stolen motor vehicles in the state,[9] and that Harley Davidson ranks as the third-most-often-stolen brand of motorcycle in Iowa. She also testified that because Iowa ranks 31/50 in population and 33/50 in motor vehicle thefts, the state has a lower-than expected rate of motor vehicle thefts. Ms. Debban further testified that Cedar Rapids also has a lower-than-expected rate of motor vehicle thefts when compared to cities of similar size, i.e., cities between 100,000 and 250,000 population, in 2019.

(Doc. 37, at 2-6).

## IV. ANALYSIS

Judge Roberts found that (1) Officer Moore had reasonable suspicion to stop defendant because the color of his motorcycle did not match the color listed on the registration (Doc. 37, at 14-15); (2) if Officer Moore thought the motorcycle was stolen due to the discrepancy between the license plate and the description in the registration, that mistake was objectively reasonable (*Id.*, at 17-18); and (3) Officer Moore was permitted to pat search defendant once he made the stop (*Id.*, at 18-19). Defendant's objections pertain only to Judge Roberts' first finding. On clear error review, the Court finds that Judge Roberts' second and third findings are supported by the facts and the law and thus affirms his R&R as to those findings. The Court will address below defendant's objections to Judge Roberts' first finding.

---

[9] By inserting the bracketed language in this sentence, the Court sustains defendant's objection regarding this recitation of the evidence based on the Court's review of the record.

10

Defendant vehemently objects to what he believes was Judge Roberts' over-reliance on Officer Moore's "dystopian" description of "constant" motor vehicle theft in Cedar Rapids and that Judge Roberts "credited Officer Moore's testimony that vehicle theft in Cedar Rapids is 'constant.'" (Doc. 43, at 4-8). Defendant is mistaken. Judge Roberts did not rely on or credit Officer Moore's conclusion that vehicle thefts were constant in finding that Officer Moore had sufficient information to have a reasonable suspicion to stop defendant. Nowhere in Judge Roberts' findings does he rely on Officer Moore's conclusion. Judge Roberts' only reference to the constant vehicle thefts is when reciting Officer Moore's testimony. Rather, Judge Roberts based his finding of reasonable suspicion on the following facts: (1) the motorcycle defendant was riding did not match the color listed on the registration; (2) defendant was riding in a neighborhood where Officer Moore testified he had been involved in a number of other cases within the past year and within approximately one mile from where he stopped defendant involving vehicles with license plates that did not match their registrations and those vehicle stops resulted in criminal charges; and (3) Officer Moore was aware of three cases involving stolen motorcycles or vehicles at the very site of the traffic stop here, two of which involved vehicles that had been repainted or were different colors from those stated in their registrations. (Doc. 37, at 14-15). Thus, far from basing his conclusion on Officer Moore's general observation that vehicle thefts were constant, Judge Roberts based his conclusion on the officer's specific observation of the subject motorcycle and his personal knowledge of a high incidence of criminal activity involving vehicles in the small geographic location of the stop here.

Defendant also takes issue with Officer Moore's lack of statistical knowledge of vehicle thefts in the area and asserts that officers cannot have a reasonable suspicion to effect a stop unless they have a statistical or probabilistic basis for assessing the likelihood

11

that criminal activity is afoot. (Doc. 43, at 5-8). There are at least two problems with defendant's objections here.

First, the law does not require officers to be armed with quantitative or statistical data before they may formulate reasonable suspicion to believe that crime may be afoot. Rather, an officer may consider the totality of the circumstances, including seemingly innocent behavior, in assessing whether there is a reasonable suspicion that crime is afoot. *See United States v. Quinn*, 812 F.3d 694, 697–98 (8th Cir. 2016) ("[I]n evaluating the validity of a *Terry* stop, [the Court] must consider the totality of the circumstances."); *United States v. Stewart*, 631 F.3d 453, 457 (8th Cir. 2011) (noting that factors that may be consistent with innocent behavior, when considered under the totality of circumstances, may give rise to reasonable suspicion). Indeed, "'innocent behavior frequently will provide the basis for a showing of probable cause' to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens demands." *Illinois v. Gates*, 462. U.S. 213, 243 n.13 (1983). Officers are fully empowered to "draw on their own experiences and specialized training to make inference from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)).

The Supreme Court rejected an argument similar to defendant's argument here when the Ninth Circuit Court of Appeals held that reasonable suspicion required some type of empirical showing that a suspect's conduct did not also describe the behavior of significant numbers of innocent persons. *United States v. Sokolow*, 490 U.S. 1, 6 (1989). The Supreme Court found that requirement was not in keeping with the Court's prior decisions. *Id.* at 8. So, too, must the Court reject defendant's assertion that an officer must have some type of statistical knowledge base upon which to form his beliefs instead of relying on his own knowledge, experience, and common sense. *See also Cortez*, 449

12

U.S. at 418 (explaining reasonable suspicion deals with probabilities, not "hard certainties" and police officers are permitted to form "certain common sense conclusions about human behavior").

Second, defendant's statistics, while interesting, are not terribly informative. Indeed, the general statistics could be interpreted to actually increase the probability that crime was afoot here. For example, that Iowa generally has a lower than expected rate of vehicle theft (Doc. 43, at 5) could mean that if it is higher than expected in a particular neighborhood that it is more likely that criminal activity is afoot there. Defendant concedes that "[t]here does appear to be some sort of coincidence between" the location Officer Moore saw defendant riding a motorcycle with a color different from that listed on the registration and where at least three other cases of stolen vehicles recently occurred. (Doc. 43, at 13). Coincidence may be one way of describing it; a remarkable concurrence of events without apparent causal connection. Another way to look at it is that it was no mere coincidence; that if there are few vehicle thefts generally in Iowa, a large number of thefts in a small area suggests that criminal activity is more likely afoot in that area. Similarly, the fact that Iowa experienced a 12% decrease in vehicle thefts in the last several years may actually give rise to a greater suspicion when officers observe three vehicle thefts during a short period of time concentrated in a geographically small area, despite the general decrease state-wide.

Defendant objects to Judge Roberts' reliance on Officer Moore's anecdotal evidence of other vehicle stops in the area by pointing out factual differences in those cases that provided other basis for reasonable suspicion beyond those present here. (Doc. 43, at 10-12). Defendant misapprehends the import of this anecdotal evidence. It is not important whether those other occasions involved facts similar to those present here. Rather, the import is that through whatever means, based on whatever evidence, Officer Moore became aware of a high incidence of vehicle-related criminal activity in the small

13

geographic area where he observed defendant riding a motorcycle whose color did not match the registration. The source of that information—how officers came to stop those vehicles—is not relevant to whether Officer Moore had that information which added to his basis for reasonable suspicion.

Defendant also objects to Judge Roberts' reliance on *State v. Thiel*, Nos. 01-0029, 1-486, 2001 WL 1448490 (Iowa Ct. App. 2001), arguing that the case is not persuasive because it "contains no analysis" and "was incorrectly decided[.]" (Doc. 43, at 10). The Court disagrees. Although there is little analysis in *Thiel*, the similarity of facts there and here is at least informative and the Court does not find it incorrectly decided. More important, Judge Roberts relied on a number of other cases as well, none of which defendant attempts to distinguish. *See* Doc. 37, at 11-14.

## V. CONCLUSION

For the reasons stated above, defendant's objections are **overruled in part and sustained in part**. (Doc. 43). The Court **adopts** Judge Roberts' Report and Recommendation with minor modifications (Doc. 37) and **denies** defendant's Motion to Suppress (Doc. 24).

**IT IS SO ORDERED** this 5th day of November, 2021.

_____
C.J. Williams
United States District Judge
Northern District of Iowa